<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRAVELODGE HOTELS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HUBER HOTELS, LLC, *et al.*,<br><br>Defendants. | Case No. 2:19-cv-20571 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Robert Huber and Janette Huber's (the "Hubers") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 37.) Plaintiff Travelodge Hotels, Inc. ("Travelodge") filed an opposition to the motion (ECF No. 39), and the Huber's filed a reply (ECF No. 42). Also before the Court is Travelodge's Motion for Partial Summary Judgment on Counts Two, Four, and Six of the Complaint. (ECF No. 38.) Defendant Huber Hotels, LLC ("Huber Hotels") and the Hubers (collectively, "Defendants") filed an opposition to Travelodge's motion (ECF No. 40), and Travelodge filed a reply (ECF No. 41). Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Hubers' Motion for Summary Judgment is **DENIED**, and Travelodge's Motion for Partial Summary Judgment is **DENIED**.

**I.   BACKGROUND**

This case arises out of a breach of contract dispute between Travelodge as the franchisor, Huber Hotels as the franchisee, and the Hubers as the principal members of Huber Hotels. (Compl.

(ECF No. 1) ¶¶ 1–4.) Travelodge is a corporation operating a guest lodging facility franchise system with its principal place of business in Parsippany, New Jersey. (Pl.'s Statement of Undisputed Material Facts ("SUMF") (ECF No. 38-6) ¶¶ 1, 9; Defs.' Resp. to SUMF (ECF No. 40-1) ¶¶ 1, 9.) The Hubers were owners of Huber Hotels, a limited liability company operating out of Hales Corner, Wisconsin.[1] (ECF No. 38-6 ¶¶ 2–4; ECF No. 40-1 ¶¶ 2–4.) The Hubers organized Huber Hotels for the purposes of acquiring and operating a hotel in Hurley, Wisconsin. (Defs.' Mot. Br., Robert Huber Aff. (ECF No. 37-7) ¶ 2.)

On September 21, 2017, the Hubers applied to become a Travelodge franchise. (Defs.' Mot. Br., SUMF (ECF No. 37-3) ¶ 12; Pl.'s Resp. to SUMF (ECF No. 39-2) ¶ 12.) On October 12, 2017, the Hubers, through the Huber Hotels entity, purchased Snow Country hotel from a seller pursuant to a land contract. (ECF No. 37-3 ¶ 10; ECF No. 39-2 ¶ 10.) The hotel had a ninety-nine-room capacity. (ECF No. 38-6 ¶ 12; ECF No. 40-1 ¶ 12.) The Hubers never owned a hotel before. (ECF No. 37-7 ¶ 2.)

Before entering into an agreement with Travelodge, the Hubers spoke with a Travelodge representative about becoming a Travelodge franchisee. (ECF No. 37-3 ¶ 13; ECF No. 39-2 ¶ 13.) The Travelodge representative came to the Hubers' home in Wisconsin on two occasions. (ECF No. 37-3 ¶ 14; ECF No. 39-2 ¶ 14.) On the second occasion, the Travelodge representative came with franchising documents for the Hubers to sign and to collect an initial fee of $11,000. (ECF No. 37-3 ¶¶ 14–15, 17; ECF No. 39-2 ¶¶ 14–15, 17.) The documents included a franchise agreement (the, "Franchise Agreement") and a personal guaranty (the, "Guaranty"). (ECF No. 37-3 ¶ 16; ECF No. 39-2 ¶ 16.) The Hubers were also presented with a SynXis Subscription

---

[1] Defendants Robert Huber and Janette Huber are each 50% owners of Huber Hotels. (ECF No. 38-6 ¶¶ 5–7; ECF No. 40-1 ¶¶ 5–7.)

Agreement, which pertained to access and use by Huber Hotels of certain computer programs. (ECF No. 38-6 ¶ 13; ECF No. 40-1 ¶ 13.)

On November 10, 2017, the Hubers entered into the Franchise Agreement with Travelodge. (ECF No. 38-6 ¶ 10; ECF No. 40-1 ¶ 10.) Robert Huber signed the Franchise Agreement as a managing member of Huber Hotels. (ECF No. 37-3 ¶ 16; ECF No. 39-2 ¶ 16.) The Franchise Agreement includes several provisions pertinent to the parties' dispute. Pursuant to Section 5, the Franchise Agreement was for a term of fifteen years. (Franchise Agreement, Kobylarz Aff., Ex. A (ECF No. 38-5) at 21 of 91.) Pursuant to Section 7 of the Franchise Agreement, Huber Hotels was required to pay certain royalties, system assessment fees, taxes, interest, SynXis fees, and other recurring fees (collectively, "Recurring Fees") to Travelodge. (*Id*. at 21–22 of 91.) Section 7.1.1 of the Franchise Agreement provides Huber Hotels is required to pay "four and five-tenths percent (4.5%) of Gross Room Revenues of the [hotel]" to Travelodge. (*Id.* at 21 of 91.) Section 7.1.2 of the Franchise Agreement requires Huber Hotels to pay Travelodge additional fees, including a Marketing Contribution fee "for advertising, marketing, training, and other related services and programs," as well as a Basic Reservation Fee for use of Travelodge's reservation system. (*Id*. at 28 of 91.)

The terms of the Franchise Agreement also provide that Travelodge would integrate Huber Hotels into its reservation system, stating:

> 4.2 Reservation System. We will operate and maintain (directly or by contracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion. We will use Basic Reservation Fees we collect as part of the System Assessment Fees for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System. We or our Approved Supplier will provide software maintenance and support for any software we or an Approved Supplier license to you to connect to the Reservation System if you are up to date in your

3

> payment of Recurring Fees and all other fees you must pay under any other agreement with us, an affiliate or the supplier, as applicable. During the Term, the Facility will participate in the Reservation System on an exclusive basis, including entering into all related technology agreements and complying with all terms and conditions which we establish from time to time for participation. The Facility may not book any reservations through any other electronic reservation system, booking engine or other technology.

(*Id.* at 19 of 91.)

Further, Section 9 of the Franchise Agreement provides Huber Hotels' franchise with Travelodge is subject to termination if ownership of the hotel is transferred without Travelodge's prior consent. (*Id.* at 23 of 91.) Section 11.2 of the Franchise Agreement provides Travelodge may terminate the agreement if Huber Hotels discontinues operating the hotel as a Travelodge or if Huber Hotels "lose[s] possession or the right of possession of the" hotel. (*Id.* at 26 of 91.) In the event of an early termination, Section 12.1 of the Franchise Agreement provides Huber Hotels pay Travelodge liquidated damages at the rate of $2,000 per guest room at the hotel. (*Id*. at 28 of 91.) In the event of litigation, Section 17.4 of the Franchise Agreement provides the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement." (*Id.* at 33 of 91.)

In addition to entering into the Franchise Agreement, the Hubers signed a personal Guaranty for the obligations of Huber Hotels. (Guaranty, Kobylarz Aff., Ex. A (ECF No. 38-5) at 54 of 91.) According to the Hubers, the Travelodge representative asked them to sign the Guaranty individually. (ECF No. 37-3 ¶ 21.) The Hubers assert they did not believe or intend to sign the Guaranty individually. (ECF No. 37-3 ¶¶ 22, 27.) The Hubers claim they told the Travelodge representative they were not signing the Guaranty personally but as representatives of Huber Hotels. (ECF No. 37-3 ¶¶ 23, 26.) Robert Huber handwrote on the Guaranty "Robert

4

Huber/Managing Member of Huber Hotels, LLC" and Janette Huber handwrote on the Guaranty "Janette L. Huber/Member of Huber Hotels, LLC" (ECF No. 37-3 ¶¶ 24, 28; ECF No. 39-2 ¶¶ 24, 28.) According to the Hubers, they signed the Guaranty in this manner to signify their intention to not be personally bound by the Guaranty. (ECF No. 37-3 ¶¶ 24, 28.) The Hubers assert the Travelodge representative did not object to the manner in which they signed the Guaranty or object to their verbal statements of not signing the Guaranty personally. (ECF No. 37-3 ¶¶ 25, 29.)

After entering into the Franchise Agreement, the Hubers made substantial renovations to the hotel and completed a list of hotel upgrades required by Travelodge before the hotel could operate as a Travelodge facility. (ECF No. 37-3 ¶¶ 33–34; ECF No. 39-2 ¶¶ 33–34.) The Hubers completed Travelodge's list of upgrades by January 2018. (ECF No. 37-3 ¶ 34; ECF No. 39-2 ¶ 34.) However, Travelodge did not integrate the hotel into its reservation system or advertise the hotel on its website until May 2018. (ECF No. 37-3 ¶¶ 36, 39–40; ECF No. 39-2 ¶¶ 36, 39–40.) In June 2018, the Hubers could no longer sustain the business and decided to close the hotel. (ECF No. 37-3 ¶ 47; ECF No. 39-2 ¶ 47.) On June 18, 2018, the Hubers transferred ownership of the hotel back to the seller. (ECF No. 37-3 ¶ 48; ECF No. 39-2 ¶ 48.)

On July 16, 2018, Travelodge advised Huber Hotels by way of letter that the transfer of ownership of the hotel terminated the Franchise Agreement and informed Huber Hotels that it was required to pay Travelodge liquidated damages for the premature termination. (ECF No. 38-6 ¶¶ 36–37; ECF No. 40-1 ¶¶ 36–37.) The letter also indicated Huber Hotels was required to pay all outstanding Recurring Fees. (ECF No. 38-6 ¶ 37; ECF No. 40-1 ¶ 37.) According to Travelodge, the Hubers owe Recurring Fees, including interest, in the amount of $72,059.27, and liquidated damages in the amount of $198,000, plus interest. (ECF No. 38-6 ¶¶ 39, 45.) Travelodge also claims it is entitled to attorneys' fees and costs under the Franchise Agreement. (*Id*. ¶ 47.) In total,

5

Travelodge is seeking $398,123.25 from Huber Hotels and the Hubers for the alleged breach of the Franchise Agreement. (ECF No. 38-6 ¶ 48; ECF No. 40-1 ¶ 48.)

On November 21, 2019, Travelodge filed a Complaint against the Hubers and Huber Hotels for the alleged breach of the Franchise Agreement, seeking an accounting of Huber Hotels revenue (Count One); liquidated damages for premature termination (Count Two); actual damages for premature termination (Count Three); Recurring Fees due and owed under the Franchise Agreement (Count Four); damages for unjust enrichment (Count Five); and a judgment for all demanded damages against the Hubers in their personal capacity under the terms of the Guaranty (Count Six). (ECF No. 1.) On August 13, 2021, the Hubers filed a Motion for Summary Judgment (ECF No. 38-3), and Travelodge filed a Motion for Partial Summary Judgment on Counts Two, Four, and Six (ECF No. 37-1). On September 3, 2021, the parties filed their respective oppositions (ECF Nos. 39, 40), and on September 13, 2021, the parties filed their respective replies (ECF Nos. 41, 42).

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983)). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either: (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. (citations omitted). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quotation marks omitted). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### III. DECISION

For an alleged breach of the Franchise Agreement, Travelodge is seeking summary judgment as to Count Two for liquidated damages, Count Four for unpaid Recurring Fees, and Count Six for a judgment of all demanded damages against the Hubers personally. (ECF No. 37-1.) The Hubers move for summary judgment to dismiss the Complaint against them and avoid personal liability under the Guaranty for any alleged damages. (ECF No. 38-3.) The Court first addresses Travelodge's breach of the Franchise Agreement claims and then addresses the enforceability of the personal Guaranty.

#### A. Breach of the Franchise Agreement

Travelodge argues there are no genuine issues of material fact Defendants breached the Franchise Agreement. (ECF No. 38-3 at 5.) Specifically, Travelodge argues Defendants unilaterally terminated the Franchise Agreement by transferring ownership of the hotel without Travelodge's prior consent. (*Id*. at 5–6.) Defendants counter Travelodge breached the Franchise Agreement by failing to perform its obligations under the agreement terms. (ECF No. 40 at 6.) Specifically, Defendants contend Travelodge failed to integrate Huber Hotels into its reservation system within a reasonable time as required under the Franchise Agreement. (ECF No. 40 at 4.)

Under New Jersey law, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); *Red Roof Franchising, LLC v. AA*

*Hosp. Northshore, LLC*, 877 F. Supp. 2d 140, 149 (D.N.J. 2012).[2] However, "New Jersey courts recognize that a material breach by either party to a bilateral contract excuses the other party from rendering any further performance." *Travelodge Hotels, Inc. v. Elkins Motel Assocs.*, Civ. A. No. 03-799, 2005 U.S. Dist. LEXIS 24534, at *14–15 (D.N.J. Oct. 17, 2005); *see Nolan ex rel. Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990) ("[W]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement."); *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998) ("It is black letter contract law that a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance.").

"Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages." *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992). Nevertheless, "[u]nder no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." *Ramada Worldwide, Inc. v. Hotel of Grayling, Inc.*, Civ. A. No. 08-3845, 2010 U.S. Dist. LEXIS 65186, at *9 (D.N.J. June 30, 2010) (quoting *S&R Corp.*, 968 F.2d at 376).

For contracts involving "a series of acts over a long term, a material breach may arise upon a single occurrence or consistent recurrences which tend to defeat the purpose of the contract." *Magnet Res.*, 723 A.2d at 981 (citation and quotation marks omitted). In applying the test of materiality, "a court should evaluate the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be

---

[2] Section 17.6.1 of the Franchise Agreement provides "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey[.]" (ECF No. 38-5 at 34 of 91.)

9

repeated." *Id.* at 981. "Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions." *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F. Supp. 2d 788, 797 (D.N.J. 2005) (citing *Magnet Res.*, 723 A.2d at 981).

Here, there are genuine issues of material fact as to whether Travelodge's failure to integrate Huber Hotels into its reservation system within a reasonable time constituted a material breach of the Franchise Agreement, and whether such conduct relieves Defendants of their obligations under the agreement. *See Travelodge*, 357 F. Supp. 2d at 797–98 (denying summary judgment "because [the defendants] performance was excused by a material breach by Travelodge"). Pursuant to Section 3.4.1 of the Franchise Agreement, Huber Hotels was to "participate in System marketing programs, including the Directory, . . . the Reservation System, and guest loyalty programs." (ECF No. 38-5 at 13 of 91.) Section 4.2 of the Franchise Agreement provides "[d]uring the Term, [Huber Hotels] will participate in the Reservation System on an exclusive basis." (*Id.* at 19 of 91.) However, Travelodge did not implement the reservation system until one month before the Hubers "ran out of money" and transferred ownership of the hotel back to the original seller. (ECF No. 37-3 ¶¶ 47–49; ECF No. 39-2 ¶¶ 47–49.) Indeed, it is undisputed the Hubers purchased the hotel in October 2017, the Franchise Agreement was signed in November 2017, Travelodge did not implement the Reservation System until May 2018, and the Hubers transferred ownership to the original owner in June 2018. (ECF No. 37-3 ¶¶ 10, 16, 36, 48; ECF No. 39-2 ¶¶ 10, 16, 36, 48.) Therefore, there is "a sufficient evidentiary basis on which a reasonable jury could find" Defendants are excused from their obligations to pay liquidated damages and

Recurring Fees because Travelodge's failure to timely perform on its obligations was a material breach of the Franchise Agreement.[3] *Kaucher*, 455 F.3d at 423.

Further, to the extent Travelodge contends the delay in opening Huber Hotels as a Travelodge franchise was the "fault" of the Hubers because "they couldn't get the list [of hotel upgrades] done" (ECF No. 41 at 1–2), Travelodge misconstrues the record. The Hubers completed the list of hotel upgrades required by Travelodge in January 2018. (ECF No. 37-3 ¶ 34; ECF No. 39-2 ¶ 34.) Travelodge did not implement the reservation system until several months later. (ECF No. 37-3 ¶ 35; ECF No. 39-2 ¶ 35.) Moreover, to the extent Travelodge contends "minor delays" are "insufficient to rise to the level of a material breach" (ECF No. 41 at 2), the Court disagrees with Travelodge's characterization. Of the seven months the Hubers operated the hotel, Travelodge didn't implement the reservation system until one month before the Hubers transferred the hotel to the original owner. (ECF No. 37-3 ¶¶ 33, 36, 39–45, 47–50; ECF No. 39-2 ¶¶ 33, 36, 39–45, 47–50.) Indeed, it is undisputed Travelodge entered into the Franchise Agreement with Defendants in November 2017, did not integrate Huber Hotels into its systems until May 2018, and notified the Hubers the agreement was terminated as of June 2018. (ECF No. 37-3 ¶¶ 10, 36, 47; ECF No. 39-2 ¶¶ 10, 36, 47; ECF No. 38-5 at 83 of 91.) Because the Hubers have raised genuine issues of material fact as to whether Travelodge's delay in implementing the Reservation System and other systems was a material breach of the Franchise Agreement, Travelodge is not

---

[3] Notably, it is unclear how Travelodge is calculating its alleged outstanding Recurring Fees. Travelodge issued a Notice of Termination letter with a termination date of June 18, 2018. (Notice of Termination, Kobylarz Aff., Ex. E (ECF No. 38-5) at 83 of 91.) Travelodge also recognizes the Hubers relinquished control and transferred ownership of the hotel in June 2018. (*Id*.) However, Travelodge is claiming outstanding Recurring Fees for several months after the Hubers relinquished control of the hotel. (Itemized Statement, Kobylarz Aff., Ex. F (ECF No. 38-5) at 90–91 of 91.)

entitled to summary judgment.[4] Accordingly, Travelodge's motion for summary judgment as to Counts Two, Four, and Six of the Complaint are **DENIED**.[5]

### B. Guaranty

The Hubers move for summary judgment to dismiss claims against them personally. (ECF No. 37-1 at 1.) The Hubers argue the Guaranty is not enforceable against them because they "never intended to personally guarantee the obligations of Huber Hotels." (*Id.* at 6.) Travelodge asserts the Hubers signed the Guaranty and were aware they would be personally liable for the obligations of Huber Hotels. (ECF No. 39 at 6.) Travelodge argues summary judgment should be denied because the Hubers have failed to properly support their motion with admissible evidence and the motion rests on credibility determinations that are for a jury to decide. (*Id.* at 6–8.)

Because a guaranty is a contract, courts look to rules governing contract construction for interpreting a guaranty's terms. *See Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 810 A.2d 610, 618–19 (N.J. Super. Ct. App. Div. 2002) (citing *Garfield Trust Co. v. Teichmann*, 95 A.2d 18 (N.J. Super. Ct. App. Div. 1953). Under New Jersey law, if the terms of a contract are clear and unambiguous, courts must enforce those terms as written. *See City of Orange Twp. v. Empire Mortg. Svcs., Inc.*, 775 A.2d 174, 179 (N.J. Super. Ct. App. Div. 2001) (citing *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960); *Levison v. Weintraub*, 521 A.2d 909, 910 (N.J. Super. Ct. App. Div. 1987), *cert. denied*, 527 A.2d 470 (N.J. 1987)). "An ambiguity in a contract exists

---

[4] Defendants also assert Travelodge's termination of the Franchise Agreement was a violation of Wisconsin law, and therefore Travelodge cannot claim Defendants defaulted. (ECF No. 40 at 7, 9.) Because there are genuine issues of material fact regarding whether Travelodge's conduct in failing to timely integrate Huber Hotels into the reservation system constituted a material breach, the Court need not address Defendants' violation of Wisconsin law contentions.

[5] Because there are genuine issues of material fact regarding liability, the Court does not reach the issue of damages.

if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002) (citation omitted). Whether the terms of a contract are clear and unambiguous is a question of law and is suitable to be considered at summary judgment. *Ramada Worldwide, Inc. v. RIP Mgmt. Grp. Corp.*, Civ. A. No. 07-1540, 2009 U.S. Dist. LEXIS 53808, at *12 (D.N.J. June 25, 2009) (citing *Driscoll Const. Co., Inc. v. State, Dept. of Transp.*, 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004)).

The terms of a guaranty must be read "in accordance with the reasonable expectations of persons in the business community involved in transactions of the type involved." *Ctr. 48 Ltd. P'ship*, 810 A.2d at 619; *Howard Johnson Int'l, Inc. v. Holeyfield*, Civ. A. No. 03-418, 2004 U.S. Dist. LEXIS 33080, at *11–12 (D.N.J. July 6, 2004) ("A guaranty is a contract and must be interpreted according to its clear terms so as to effect the objective expectations of the parties.") (citing *Housatonic Bank & Trust Co. v. Fleming*, 560 A.2d 97 (N.J. Super. Ct. App. Div. 1989)). "While any ambiguity should be construed in favor of the guarantor, the agreement should be interpreted according to its clear terms so as to effect the objective expectations of the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, Civ. A. No. 05-3452, 2008 U.S. Dist. LEXIS 63600, at *15–16 (D.N.J. July 30, 2008) (quoting *Ctr. 48 Ltd. P'ship*, 810 A.2d at 619). "[A]bsent more than one plausible interpretation," a court enforces the terms of the guaranty as written. *B.D. v. Div. of Med. Assistance & Health Serv.*, 937 A.2d 980, 984 (N.J. Super. Ct. App. Div. 2007).

Here, the Hubers signed the Guaranty and the terms of the Guaranty are clear and unambiguous. The Guaranty provides "the undersigned . . . guaranty that [Huber Hotels'] obligations under the Agreement, including any amendments, will be punctually paid and performed." (ECF No. 38-5 at 54 of 91.) The Hubers concede a Travelodge representative asked

the Hubers to sign the Guaranty and the Hubers were aware the Guaranty was to personally bind them to the obligations of Huber Hotels. (ECF No. 37-3 ¶¶ 21, 23–24, 26, 28.) While the Hubers claim they informed the Travelodge representative they were not going to sign it personally, the Hubers ultimately signed the Guaranty without any modifications to the contract terms. Viewing the facts in the light most favorable to the nonmoving party, the Hubers have not met their burden in submitting a properly supported motion for summary judgment to void enforceability of the Guaranty. *See Celotex*, 447 U.S. at 322.

Moreover, to the extent the Hubers rely on *Financial Casualty Security Company, Inc. v. Mascola*, the case is readily distinguishable from the facts present here. Civ. A. No. 11-4316, 2013 U.S. Dist. LEXIS 101180 (D.N.J. July 19, 2013). In *Financial Casualty Security Company, Inc.,* the court held the member of a limited liability company was not personally liable under the contract because she "did not explicitly and clearly express an intention to make herself personally liable." *Id.*, at *14. Specifically, the court found "her one signature as a member of [the company] cannot be construed to bind both [the company] and herself personally." *Id*. Unlike in *Mascola*, the Hubers signed two different agreements, the Franchise Agreement to obligate Huber Hotels and the Guaranty to obligate the Hubers personally. Likewise, the Hubers' reliance on *City of Millville v. Rock*, is also misplaced. 683 F. Supp. 2d 319 (D.N.J. 2010). In *City of Millville*, the court held the individual defendants did not intend to bind themselves personally to the repayment of a loan. *Id*. at 328. However, the court found the word "personally" was crossed out in the agreement and the word "trusts" were penned in its place. *Id.* at 327. Here, the Hubers did not modify, remove, or replace the language in the personal Guaranty in any way. Accordingly, the Hubers' motion for summary judgment to dismiss the complaint against them is **DENIED**.

I. CONCLUSION

For the reasons set forth above, the Hubers' Motion for Summary Judgment is **DENIED**, and Travelodge's Partial Motion for Summary Judgment is **DENIED.**

/s/ *Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

Dated: January 5th, 2022

15